UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.24-216 (PJS)


SCANNED
AUG 23 2024
U.S. DISTRICT COURT MPLS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID JOHN SAXTON,

    Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and the defendant, David John Saxton, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty to Count 1 of the Information, which charges the defendant with Theft of Public Money, in violation of 18 U.S.C. § 641. The defendant fully understands the nature and elements of the crime with which he has been charged.

The United States agrees it will not charge the defendant with any other offenses related to this investigation.

2. **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count 1 of the Information. In pleading guilty, the defendant

1

admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

a. The defendant is a civilian employee of the United States Department of Veterans Affairs (VA) and has worked for the VA since 2013. He is also a retired member of the Minnesota National Guard.

b. From 2019 until November 2023, the defendant worked as an Authorization Quality Review Specialist (AQRS) for the VA. Among his duties, the defendant managed, reviewed, quality assured, and processed benefits claims. His duties also included authorizing such claims by veterans or their survivors for up to $40,000. These claims required a second Veteran Service Representative (VSR) to generate a report and sign off on the claim.

c. Beginning in December 2019, the defendant began generating false claims in the names of real veterans. Using the access he had to their accounts, the defendant changed the account in which claim awards were deposited to a bank account he controlled. The defendant then generated a claim for under $40,000 and tasked a VSR who he knew would not ask questions with generating a report. The defendant authorized the award, which was then paid into his bank account.

d. *Count 1 of the Information.* On or about November 2, 2021, the defendant knowingly stole $39,422.18 with the intention of depriving the

owner of the use or benefit of the money. The defendant admits and agrees that the money belonged to the United States Department of Veteran Affairs. The defendant admits and agrees that the value of the money was more than $1,000. Further, the defendant admits and agrees that he acted knowingly, willfully, and with the specific intent to deprive the government of the use and benefit of its property.

  e. *Additional Relevant Conduct.* The defendant agrees and stipulates that between December 2019 and August 2022, the defendant created 21 false transactions and stole a total of $389,464.29 from the Veterans Administration. To hide his fraud, the defendant opened many bank accounts—sometimes in the name of his minor daughter or wife. The defendant stopped creating false claims only after he learned one of his transactions was being investigated. A transaction trace report came across the defendant's desk after the son of a veteran complained about a suspicious transaction. To hide his fraudulent efforts, the defendant called the veteran's son and claimed the transaction was an error.

  f. Sometimes, transactions unrelated to the defendant's false claims processed close in time to when he changed the bank account associated with the veteran's account. As a result, benefits that should have been paid to the veteran or their survivors were instead paid to the defendant's bank account. In one particular case, the defendant diverted monthly benefit payments

meant for Victim 1, to his own bank account. Over the course of nearly two years, the defendant stole more than $34,000 that should have been paid to Victim 1.

3. **Waiver of Indictment**. The defendant waives the right to be charged by Indictment. The defendant agrees to sign a written waiver of this right at the change-of-plea hearing.

4. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any additional pre-trial motions in this case.

5. **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6. **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

7. **Statutory Penalties**. The defendant understands that Count 1 of the Information, charging Theft of Public Money in violation of 18 U.S.C. § 641 is a felony offense that carries the following statutory penalties:

    a. a maximum of 10 years in prison (18 U.S.C. § 641);

    b. a maximum supervised release term of 3 years (18 U.S.C. § 3583);

    c. a maximum fine of twice the gross gain (18 U.S.C. § 3571);

d.  mandatory restitution to the victims of the offense (18 U.S.C. § 3663A);

e.  a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A);

8.  **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

a.  Base Offense Level. The parties agree that the base offense level is **6**. U.S.S.G. § 2B1.1(a)(2).

b.  Specific Offense Characteristics. The parties agree that the offense level should be increased by **12 levels** because the offense involved a loss of more than $250,000 but less than $550,000. U.S.S.G. § 2B1.1(b)(1)(G). The parties agree that no other specific offense characteristics apply.

c.  Chapter 3 Adjustments. The Government believes the defendant qualifies for a **2 level** adjustment because the defendant abused a position of trust or used a special skill that significantly facilitated the commission of the offense. U.S.S.G. § 3B1.3(b)(1). The defendant believes the adjustment does not apply and reserves the right to object to its application.

d.  Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **2-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the

6

government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **1-level** reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e. Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and neither party he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f. Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct,

the parties agree the defendant qualifies for a **2-level** adjustment under U.S.S.G. § 4C1.1.

g. Guidelines Range. If the adjusted offense level is **15**, and the criminal history category is **I**, the Sentencing Guidelines range is **18-24 months of imprisonment**. If the adjusted offense level is **13**, and the criminal history category is **I**, the Sentencing Guidelines range is **12-18 months of imprisonment.**

h. Fine Range. If the adjusted offense level is **15**, the Sentencing Guidelines fine range is **$7,500 to $75,000**. U.S.S.G. § 5E1.2(c). If the adjusted offense level is **13**, the Sentencing Guidelines fine range is **$5,500 to $55,000.**

i. Supervised Release. The Sentencing Guidelines' term of supervised release is 1 to 3 Years. U.S.S.G. § 5D1.2.

9. **Revocation of Supervised Release.** The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

10. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that

falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11. **Agreements as to Sentencing Recommendation**. The United States agrees to recommend a sentence at the low-end of the applicable Guidelines range as determined by the Court. The Defendant is free to recommend whatever sentence he deems appropriate. The Defendant reserves the right to make a motion for a departure under the Sentencing Guidelines or for a variance pursuant to 18 U.S.C. § 3553(a). If the Court does not accept the sentencing recommendation of the parties, neither the government nor the defendant will have a right to withdraw from this agreement.

12. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

13. **Restitution Agreement**. The defendant agrees that he owes restitution and is required to pay mandatory restitution to victims of his

9

offense. The defendant agrees that the Court shall order him to pay restitution in the amount of $389,464.29 to the Veterans Administration. 18 U.S.C. § 3663A(a)(3).

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c),

10

any property, real or personal, which constitutes or is derived from proceeds traceable to the theft charged in Count 1. The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest the defendant may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges.

16. **Termination of VA Employment.** Due to the conduct described herein, the defendant agrees to be terminated from his position with the VA. He further agrees that he will not appeal, contest, or otherwise challenge this termination through administrative or civil action. The defendant agrees that he will not seek future employment with the VA.

17. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to

11

the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 24 months' imprisonment.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below 12 months' imprisonment.

18. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

19. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

ANDREW M. LUGER
United States Attorney

Date: 23 August 2024

BY: *(signed)* Michael P. McBride
Assistant United States Attorney

Date: 8-23-2024

*(signed)*
David J. Saxton
Defendant

Date: 8-23-2024

*(signed)*
Matthew Deates
Counsel for Mr. Saxton